IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3132-FL

| | | |
|---|---|---|
| ANTHONY B. UTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BETTY BROWN, ROBERT LEWIS, CARLTON JOYNER, SERGEANT SHAW, SERGEANT HARTSHELL, SERGEANT DORMAN, CORRECTIONAL OFFICER CADRETTE, and CORRECTIONAL OFFICER GRESSLE, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' motion to dismiss (DE 38) pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised were fully briefed and are ripe for adjudication. For the foregoing reasons, the court denies defendants' motion.

**STATEMENT OF THE CASE**

On June 22, 2012, plaintiff Anthony B. Utt ("Utt"), a state inmate acting *pro se,* sought to bring this civil rights action as a class action on behalf of himself, as well as previously-named plaintiffs Daniel Capshaw ("Capshaw") and Frankie L. Peach ("Peach"), pursuant to 42 U.S.C. § 1983. On December 21, 2012, the court entered an order denying Utt's motion for class certification

and dismissed Capshaw and Peach.[1] The court also directed Utt to particularize his individual action.

Utt filed his amended pleading on January 31, 2013. Utt, a practitioner of the Wicca faith, alleged that defendants North Carolina Department of Public Safety ("DPS") Director of Chaplaincy Services Betty Brown ("Brown"), DPS Secretary Robert Lewis ("Lewis"), Harnett Correctional Institution ("Harnett") Superintendent Carlton Joyner ("Joyner"), Sergeant Shaw ("Shaw"), Sergeant Hartshell ("Hartshell"), Sergeant Dorman ("Dorman"), correctional officer Cadrette ("Cadrette"), correctional officer Gressle ("Gressle"), as well as John and Jane Doe defendants violated his rights pursuant to the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). In particular, Utt alleged that defendants refused to allow him to use tarot cards to practice his religion, confiscated his religious property, and denied him the opportunity to participate in corporate worship services. As relief, Utt sought declaratory and injunctive relief, as well as compensatory and punitive damages. On May 31, 2013, the court allowed Utt to proceed with his action against defendants Lewis, Brown, Joyner, Shaw, Hartshell, Dorman, Cadrette, and Gressle, but dismissed Utt's action against the John and Jane Doe defendants.[2]

On September 9, 2013, all remaining defendants filed a motion to dismiss, arguing that Utt failed to state a claim upon which relief may be granted. Defendants' motion was fully briefed.

## STATEMENT OF THE FACTS

---

[1] The court has constructively amended the caption of this order to reflect dismissal of Capshaw and Peach.

[2] The court has constructively amended the caption of this order to reflect dismissal of the John and Jane Doe defendants.

The facts viewed in the light most favorable to Utt may be summarized as follows. Utt, a state inmate, is incarcerated at Harnett and practices Wicca. (Am. Compl. pp. 2, 6.) On December 29, 2010, defendant Shaw informed Utt that Utt was not permitted to use tarot cards in the prison yard. (Id. p. 6 and Ex. A.) In response, Utt filed a grievance complaining that inmates of other religious faiths such as Christianity were permitted to practice their faith in the prison yard. (Am. Compl. Exs. A-C.) In response, prison staff informed Utt that "[p]er DOP/DOC policy, an inmate may privately pray, worship, mediate, study scriptures, or religious literature if he does not disrupt other inmates, programs, work assignments, or pose a problem for the management, or security of the prison. An inmate is never recognized as clergy nor is he permitted to function as one. Tarot cards are for personal use only." (Id. Ex. B.)

On February 3, 2011, defendant Hartshell confiscated all of Utt's Wiccan religious property, including his sacred items box, as directed by defendant Joyner. (Id. p. 6.) Utt subsequently received a disciplinary infraction for possessing non-threatening contraband. (Id. and Ex. D.) At his disciplinary hearing, the disciplinary hearing officer ("DHO") considered a written statement Utt provided claiming that his confiscated property was not contraband and that he previously had been permitted to have the contested property. (Id.). The DHO also considered Utt's live statement that he "had no problem with all of the items being disposed of according to policy with the exception of the [sacred items box.]" (Id.) Utt argued that he should be permitted to keep his sacred items box because other faith groups (specifically those inmates practicing the "Native American" faith) could have a sacred items box. (Id.) The DHO found Utt guilty of the disciplinary infraction. (Id.)

On March 18, 2011, defendant Cadrette gave Utt a direct order to stop "performing a Wiccan religious ritual in the day room" per a sergeant's instruction that religious observances were only

3

permitted within the religious activities center. (Id.) On October 17, 2012, defendants Gressle and Dorman confiscated from Utt additional Wiccan religious items, including multi-sided homemade dice, a metal checkers and chess container, a pendulum, and twenty-five (25) sets of homemade laminated religious cards. (Id. and Ex. K.) Utt subsequently was charged with a second disciplinary offense for possessing non-threatening contraband.[3] (Id.) Utt ultimately was found guilty of the charged offense, but the DHO directed that Utt's talisman bag be returned to Utt. (Id.) The DHO also directed that Utt's cards be returned for Utt's use during scheduled services. (Id.)

Utt additionally complained to staff that he was not permitted to practice sacred "Esbats." (Id. Ex. F.) In response, prison officials stated the following:

> In the Religious Practices Manual it states that "thirteen special days called 'Espats' [sic] or Full Moon Celebrations may be observed, however, these celebrations are subject to approval of the facility head and shall in no way interfere with work assignments." At this time, the facility head had not approved the Espats [sic] to be observed.

(Id. Ex. G.)

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550

---

[3] Utt also was charged with stealing a peanut butter sandwich. (Id. Ex. K.) This charge, however, does not involve the subject matter of this action.

U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotations omitted).

B. Analysis

Defendants raise the defense of qualified immunity against Utt's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

1. RLUIPA

Utt brings this action pursuant to RLUIPA. RLUIPA provides, in part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

5

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted). The court may "not judge the significance of the particular belief or practice in question." Id. at 187 n.2.

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Smith, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n. 8).

Utt alleges that the following violate his rights pursuant to RLUIPA: (1) DPS policy stating that tarot cards are for personal use only; (2) confiscation of homemade religious items including his pendulum, numerology dice, and sacred items box; (3) prohibition on practicing sacred Esbats; and (4) denial of corporate worship. Utt states that these policies substantially burden the practice of his religion because they prohibit him from engaging in divination, which is essential to the

6

Wiccan faith. See Thomas v. Review Board, 450 U.S. 707, 715 ("[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or [another practitioner] . . . more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation.") Accepting Utt's allegations as true, as the court must at this stage in the proceedings, Utt has set forth facts sufficient to allege a substantial burden to the practice of his religion.

In response, defendants argue that the items and activities at issue are prohibited by DPS policy. Defendants, however, failed to establish that such policies are the least restrictive means of further compelling government interests. See Couch, 679 F.3d at 203 (stating that to show that a policy is "the least restrictive means" of furthering a compelling government interest, prison officials must demonstrate that they have "consider[ed] and reject[ed]" less restrictive alternatives to the challenged practice). As a result, Utt has adequately stated a RLUIPA claim. The court, however, will consider the evidence on a more complete record and determine whether Utt is able to make a *prima facie* case that the challenged policies impose a substantial burden on his ability to practice his religion, and, if necessary, whether the burden is the least restrictive means of furthering a compelling governmental interest. Accordingly, the court reserves the issue of qualified immunity for another day.

2. First Amendment Claims

Utt alleges that DPS's policies governing his religion violate the First Amendment to the United States Constitution. The First Amendment states that "Congress shall make no law respecting an establishment of religion," U.S. Const. Amend. I, and the United States Supreme Court

7

has applied this principle against the states through the Fourteenth Amendment.  See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947).  To prove a violation of this right, an inmate must first state facts sufficient to show that (1) he holds a sincere belief that is religious in nature; (2) the prison regulation imposes a substantial burden on his right to free exercise of his religious beliefs; and (3) the regulation is not "reasonably related to legitimate penological interests."  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quotation and citation omitted).  The substantial burden test used in First Amendment inquiries was incorporated by RLUIPA.  Lovelace, 472 F.3d at 199 (citation omitted).

Here, the court has determined that Utt adequately alleged that the DPS policies at issue substantially burdened the exercise of his religion under RLUIPA.  Thus, the court likewise finds that Utt adequately pled a substantial burden for the purposes of the First Amendment.  Because defendants have not shown that the challenged policies were reasonably related to legitimate penological interests, their motion to dismiss this claim is DENIED.

3. Equal Protection

Defendants do not address Utt's equal protection claims.  Thus, these claims survive defendants' motion.

4. Supervisor Liability

Utt's claims against defendants Lewis and Brown are against them in their capacities as DPS supervisory officials.  A supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;

8

<blockquote>
(2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and

(3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
</blockquote>

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Utt alleges that Lewis and Brown have personally promulgated policies that violate his constitutional rights. This is sufficient to state a claim against these defendants. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982) (finding that § 1983 requires a showing of defendant's personal fault either based on the defendant's personal conduct or on another's conduct in execution of the defendant's policies or customs), abrogated on other grounds by, Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). Thus, the motion to dismiss this claim is DENIED.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (DE 38) is DENIED and the court reserves the issue of qualified immunity for another day. The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this the 3rd day of September, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge