IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3132-FL

| | | |
|---|---|---|
| ANTHONY B. UTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BETTY BROWN, GEORGE SOLOMON, CARLTON JOYNER, SERGEANT SHAW, SERGEANT HEARTSELL, SERGEANT DORMAN, CORRECTIONAL OFFICER CADRETTE, and CORRECTIONAL OFFICER GRESSLE, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

The matter is before the court on defendants' motion for summary judgment (DE 73) pursuant to Federal Rule of Civil Procedure 56(a). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants in part and denies in part defendants' motion for summary judgment.

## STATEMENT OF THE CASE

For ease of reference, the background as set forth in this court's February 4, 2015, order is as follows:

> On June 22, 2012, plaintiff Anthony B. Utt ("Utt"), a state inmate acting *pro se,* sought to bring this civil rights action as a class action on behalf of himself, as well as plaintiffs Daniel Capshaw ("Capshaw") and Frankie L. Peach ("Peach"), pursuant to 42 U.S.C. § 1983. On December 21, 2012, the court entered an order denying Utt's motion for class certification and dismissed Capshaw and

Peach.[1]  The court also directed Utt to particularize his individual action.

Utt filed his amended pleading on January 31, 2013.  Utt, a practitioner of the Wicca faith, alleged that defendants North Carolina Department of Public Safety ("DPS") Director of Chaplaincy Services Betty Brown ("Brown"), DPS Secretary [George Solomon ("Solomon")[2],] Harnett Correctional Institution ("Harnett") Superintendent Carlton Joyner ("Joyner"), Sergeant Shaw ("Shaw"), Sergeant H[eartsell] ("H[eartsell]"), Sergeant Dorman ("Dorman"), correctional officer Cadrette ("Cadrette"), correctional officer Gressle ("Gressle"), as well as John and Jane Doe defendants violated his rights pursuant to the First Amendment to the United States Constitution[,] the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[,and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution].  In particular, Utt alleged that defendants refused to allow him to use tarot cards to practice his religion, confiscated his religious property, and denied him the opportunity to participate in corporate worship services.  As relief, Utt sought declaratory and injunctive relief, as well as compensatory and punitive damages.  [Specifically, plaintiff sought the following:  (1) return of his sacred items box; (2) ability to honor the esbats and sabbats; (3) ability to have a feast; (4) ability to read tarot; (5) ability to hold "working circles;" (6) ability to possess "appropriate sacred Wiccan religious items; (7) ability to observe ritual occasions whether or not an outside volunteer is available/present; (8) ability to engage in religious study on a weekly basis, coordinated by an inmate faith leader; (9) ability to possess more than one book of shadows at a time; and (10) ability to possess appropriate materials to maintain and add to his book of shadows.]  On May 31, 2013, the court allowed Utt to proceed with his action against defendants [Solomon], Brown, Joyner, Shaw, H[eartsell], Dorman, Cadrette, and Gressle, but dismissed Utt's action against the John and Jane Doe defendants.

On September 9, 2013, all remaining defendants filed a motion to dismiss, arguing that Utt failed to state a claim upon which relief may be granted.  Defendants' motion was fully briefed.

---

[1]  The court has constructively amended the caption of this order to reflect dismissal of Capshaw and Peach.

[2]  Pursuant to Federal Rule of Civil Procedure 25(d), the court substitutes George Solomon for former defendant Robert Lewis.  See Fed. R. Civ. P. 25(d).

2

On September 3, 2014, the court entered an order denying defendants' motion to dismiss and reserving the issue of qualified immunity for another day. The court then issued a case management order, which included a February 3, 2015, discovery deadline.

On December 23, 2014, plaintiff filed a motion for a court order compelling defendants to fully respond to his discovery requests. The motion was fully briefed.

((DE 62), pp. 1-2.)

On February 4, 2015, the court entered an order granting in part and denying in part plaintiff's motion to compel. As part of its order, the court directed defendants to respond to plaintiff's request for the North Carolina Department of Public Safety's religious practices manual as well as to his requests for "any and all documents related to prison chaplaincy services staff training and education within the NCDAC;" and "any and all documents related to consultation with individuals outside the NCDAC regarding the Wiccan faith, specifying why such consultation occurred." (Id. p. 5.)

Plaintiff next filed a motion for a temporary restraining order requesting that the court enter an order directing DPS to permit him greater access to his legal property, paper for copies, and a transfer to another prison facility, which the court denied. Plaintiff subsequently filed a motion for access to a law library and a second motion to compel discovery. The court denied both motions.

On April 20, 2015, defendants Brown, Cadrette, Dorman, Gressle, Heartsell, Joyner, Solomon, and Shaw filed a motion for summary judgment, arguing that plaintiff cannot establish a constitutional violation. Alternatively, defendants assert the affirmative defense of qualified immunity. In support of their motion, defendants provided affidavits from defendants Brown, Joyner, Gressle, Heartsell, and Dorman, as well as the following: excerpts of several State of North Carolina Prisons Policies and Procedures; the DPS' Religious Practices Reference Manual; an email

3

from Darla Kaye Wynne; a January 25, 2011, letter from plaintiff; plaintiff's February 23, 2011, inmate property log; relevant Harnett's Policies and Procedures governing inmate searches; a memorandum from Harnett Clinical Chaplain II Terri Stratton; records pertaining to plaintiff's disciplinary hearings regarding confiscated property; grievances and grievance responses; and an employee time sheet for defendant Cadrette.

Plaintiff responded to defendants' motion and attached affidavits from inmates Steven Schultz, Willie Werr, Keith Barbee, Billy J. Tysinger, and Johnny D. Lee, as well as the following: additional grievances and grievance responses; a December 31, 2014, letter from Darla Kaye Wynne; a January 17, 2015, letter from Lady Ashleen O'Gaea; a document captioned "Charge of the Goddess;" 2004 emails from Darla Kaye Wynne and defendant Brown and Chaplain Bird; his February 23, 2011, inmate property log; and a religious services schedule for the month of March 2015 at Lumberton. Defendants replied.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows. When plaintiff filed this action, he was incarcerated at Harnett Correctional Institution ("Harnett"). (Am. Compl. p. 2.) Plaintiff is a practitioner of the Wiccan faith and has been a practitioner of this faith for 27 years. (Id. p. 6 and Pl.'s Aff. (Am. Compl. Attach.), p. 1.)

The North Carolina Department of Public Safety ("DPS") recognizes Wicca[3] as an approved religion in its Religious Practices Reference Manual. (Brown Aff. Ex. B.) In developing its Wicca policies reflected in the manual, DPS consulted outside sources, including Darla Kaye Wynne, the

_____

[3] As suggested in Brown's affidavit and exhibit thereto, "Wicca" is the term for a religious practice, a noun, whereas "Wiccan" is an adjective referencing the religion to modify another noun, or it may also be used as a noun to refer to an adherent of the Wiccan religion, (e.g., Brown Aff. ¶¶12, 17 & Ex. A (DE 73-2 at 23)), although the parties and various resources in the record appear to use the terms interchangeably.

Assistant National Director of Witches Against Religious Discrimination, Inc. (Id. ¶ 12 and Ex. D.) Ms. Wynne informed DPS that "[t]o practice Wicca, one truly only needs oneself and a book of shadows." (Id.) DPS policy, accordingly, permits inmates practicing the Wicca faith to maintain a Book of Shadows as well as the following approved religious property: sacred cloth, cauldron, talisman bag, tarot cards, one set of runes, wand, athame, a religious medallion, and reading materials. (Id. ¶ 13 and Ex. B, D.)

Plaintiff's complaint relates to four specific incidents during which he asserts he was denied the ability to practice his religious faith freely. The first incident occurred on December 29, 2010, when defendant Shaw observed plaintiff reading tarot cards and instructed plaintiff that if she observed him "reading tarot cards for anyone other than [himself], [he would] be going to segregation." (Am. Compl. p. 5; and Attach. p. 1.) Defendant Shaw further instructed plaintiff that he could not read tarot cards for himself or any other inmate in the recreation yard. (Id. Attach. p 1.)

Plaintiff then filed a grievance related to the incident in which he stated, "there are sever[al] bible studies . . . that take place in the yard" and at least two groups who study the Qu'ran in the yard. (Id. p. 2.) Plaintiff further stated that informal "religious services" occurred on a daily basis for the approximate two years prior to the filing of his December 29, 2010, grievance. (Id.) In response, prison officials stated that DPS policy provided that tarot cards were for personal use only. (Id. p. 7.) Defendant Brown explains, in her affidavit, that such policy is necessary because the reading of tarot in Wicca is a personal exercise and that permitting an inmate to read tarot for another inmate would place the reading inmate in a position of leadership over the other inmate. (Brown Aff. ¶ 16.)

5

The second incident at issue occurred on January 18, 2011,[4] when defendant Heartsell, acting at the direction of defendant Joyner, confiscated all of plaintiff's religious property including a sacred items box. (Am. Compl. p. 6.) Harnett prison officials then charged plaintiff with a disciplinary infraction for possession of contraband. (Id. Attach. p. 9.) After receiving the disciplinary charge, plaintiff contacted defendant Joyner by mail and complained that the officers wrongfully confiscated his religious items. (Joyner Aff. Ex. A.) In response, defendant Joyner consulted with Harnett Clinical Chaplain II Stratton and defendant Brown to determine which of the confiscated items were permitted by DPS' Religious Practices Reference Manual. (Id. ¶ 6.) After consulting with the chaplains, defendant Joyner met with plaintiff on February 23, 2011, and informed plaintiff that all of the confiscated items, with the exception of the moonstone and tiger's eye, were contraband. (Id. ¶ 7 and Ex. B.)

On March 2, 2011, a disciplinary hearing officer ("DHO") conducted a hearing as to plaintiff's disciplinary charge. (Am. Compl. Attach., p. 9.) The DHO noted that plaintiff submitted a written statement asserting that DPS prison officials had permitted him to possess the confiscated property for approximately 10 years prior to the date of their confiscation, and further stated that plaintiff expressed that "he had no problem with all the items being disposed of according to policy with the exception of the plastic container [or sacred items box]." (Id. pp. 9-10, 18-24.) With respect to the sacred items box, plaintiff complained that it was discriminatory for Harnett staff to permit Native Americans to possess a sacred items box, but not Wiccans. (Id. p. 9.) Plaintiff further stated that he obtained the sacred items box in exchange for entering a voluntary dismissal in a prior

---

[4] The record reflects that plaintiff was searched on January 18, 2011, and not February 23, 2011, as plaintiff sets forth in his amended complaint. (Joyner Aff. ¶ 5.) The discrepancy in dates does not affect the court's analysis for purposes of summary judgment.

6

lawsuit relating to religious discrimination. (Id. p. 11.) At the conclusion of the disciplinary hearing, the DHO found plaintiff guilty, and the sacred items box was not returned. (Id. p. 9.)

The third incident at issue occurred on March 18, 2011,[5] when defendant Cadrette "gave plaintiff a direct order to stop performing a Wiccan religious ritual in the dayroom[,]" and informed plaintiff that "religious observances were only allowed within the Religious Activities Center." (Am. Compl. p. 6.) Plaintiff then filed a grievance stating:

> Recent policy changes have made it so that we are no longer allowed to be in the dayrooms after lock down (11:30 PM on week nights, 12:30 pm on weekends/holidays). When one would normally perform Esbat rituals so as not to interfere with prison operation, and to adhered to Religious beliefs. As an adherent of the Wiccan faith, I am obligated to honor the Esbats (as the accompanying documentation clearly shows). This is a recognition of the Goddess and the Lunar cycle as to applies to her and to the practical aspect of the Esbats and Wicca. As such, an Esbat needs to be done between sunset and sunrise. To do an individual Esbat, with the religious property authorized by policy, requires an area in which the adherent can cast a circle of roughly 6' diameter. This cannot be done when the day room is full of people.

(Am. Compl. Attach., pp. 25-26.) In response, Harnett prison officials stated:

> In the Religious Practices Manual it states that "thirteen special days called 'Esbats' or Full Moon Celebrations may be observed, however, these celebrations are subject to approval of the facility head and shall in no way interfere with work assignments." At this time, the facility head has not approved the Esbats to be observed.

(Am. Compl. Attach. p. 46.)

As part of his claim, plaintiff contends that DPS refuses to permit Wiccans to engage in corporate worship. Plaintiff attached to his amended complaint an excerpt from a Wicca publication

---

[5] Plaintiff alleges that the incident occurred on March 18, 2011. (Am. Compl. p. 6.) The record reflects that defendant Cadrette was not working on that date. (Joyner Aff. ¶ 10 and Ex. H.) Defendants do not otherwise dispute the incident. For ease of reference, the court refers to the incident as the March 18, 2011, incident.

7

titled "The Ultimate Book of Shadows for the New Generation Solitary Witch," which suggests that corporate worship is a necessary part of the Wiccan religious practice and that sabbats celebrations are to be followed by a feast.[6] (Am. Compl. Attach., pp. 28-29.) Plaintiff, additionally, submitted a letter from Lady Ashleen O'Gaea stating that group esbats and sabbats are a part of the Wiccan practice. Finally, plaintiff submitted emails written by Darla Kaye Wynne, and sent to DPS officials in 2004, stating that food is an essential element of Wiccan practice. (Id. pp. 19-20.)

The DPS Religious Practices Reference Manual provides that there are no requirements for corporate worship for the Wiccan faith, but that the facility may "allow groups to observe special days together, led by an approved Volunteer, or the supervision of the chaplain." (Brown Aff. Ex. B, p. 3.) Both Harnett and Lumberton Correctional Center ("Lumberton"), where plaintiff currently is incarcerated, maintain a separate area for religious services and post a schedule which provides a designated time for each religious group's service. (Joyner Aff. ¶ 9; and Pl.'s Resp. Attach., p. 12.) The Lumberton religious services schedule does not provide a date or time for Wicca religious services. (Pl.'s Resp. Attach., p 12.) Nor were Wiccans approved to engage in corporate worship at Harnett. (Am. Compl. Attach. p. 46 and Brown Aff. ¶ 20.) Brown attributes the absence of corporate worship to the fact that plaintiff did not make a request to be an inmate leader while at Harnett, and that Brown has not received any requests for volunteers to lead Wiccan rituals. (Brown Aff. ¶ 20.) However, DPS policy provides that an inmate may not be recognized as clergy nor may an inmate function as clergy. (Id. Ex. A; State of North Carolina Department of Public Safety

_____

[6] The court notes that Ravenwolf's publication also provides instruction for the solitary practice of Wicca. (Id. at p. 29.)

8

Prison, Policies and Procedures Chpt. H, § .0107.[7])  Plaintiff further asserts that other religious groups are permitted to have inmate-led corporate worship.  (Pl.'s Resp. p. 16.)

The fourth incident at issue occurred on October 17, 2012, when defendants Gressle and Dorman confiscated "more" Wiccan religious items from plaintiff.[8]  (Am. Compl. p. 6.)  Plaintiff again was charged with a disciplinary offense.  (Gressle Aff. ¶ 8 and Ex. A, p. 2.)  At the disciplinary hearing, the DHO provided the following summary:

> [Defendant] Gressle confiscated the following items: 39 Odd shaped, multi-sided dice, a metal checkers and chess set container, 25 home made cards referred to as zenner cards, a type of necklace with a stone and string which [plaintiff] referred to as a pendulum.  Per statement from case manager Erin Keys, [plaintiff] is not allowed to have the numerical dice, the stone, not[e] cards that were confiscated.  She stated the cards were made to be used during Wiccan rituals that are held in the chapel and are not to be removed form the chapel after use.  She stated the only item he is allowed to have is the brown talisman bag (pouch).

(Id. and Am. Compl. Attach. p. 51.)  The DHO found plaintiff guilty of a disciplinary offense arising out of the possession of the alleged contraband and ordered that the talisman bag and the cards be permitted for Wiccan rituals.  (Gressle Aff. Ex A, p. 4; Am. Compl. Attach. p. 52.).  The talisman was returned to plaintiff and the cards were returned to the chapel.  (Id.)

---

[7]  The policy provides in full:
> No inmate shall exercise religious authority over any other inmate(s).  The Chaplaincy Service Central office shall provide technical support and assistance in the recommendation of inmate leadership for non-Christian faith groups.  Any inmate who provides leadership will be selected by the facility chaplain or other designated staff in consultation with Chaplaincy Services Central office staff, subject to the approval of the facility head.  No inmate shall be recognized as clergy (Reverend, Imam, Priest, etc.) and shall not be permitted to function as such.  Inmates shall not organize nor conduct group meetings without prior approval of the facility head or designee.

State of North Carolina Department of Public Safety Prison, Policies and Procedures Chpt. H, § .0107.

[8] Plaintiff filed a grievance arising out of the incident complaining that plaintiff planned to use a confiscated set of numerology dice and a pendulum as exhibits in this action.  (Am. Compl. Attach. p. 47.)

**DISCUSSION**

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247 (1986).  The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial.  <u>Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Anderson</u>, 477 U.S. at 250.

B.     Analysis

Defendants raise the affirmative defense of qualified immunity.  Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

The court initially addresses the individual claims against defendants Shaw, Heartsell, Dorman, Cadrette, and Gressle arising out of the alleged December 29, 2010, January 18, 2011, March 18, 2011, and October 17, 2012, incidents.  The record reflects that defendants Shaw,

Heartsell, Dorman, Cadrette, and Gressle were following Harnett policy on the dates at issue.[9] There is no evidence that any of these defendants are responsible for the implementation of the contested policies. Thus, plaintiff failed to establish a RLUIPA, First Amendment, or equal protection violation with respect to the individual claims against defendants Shaw, Heartsell, Dorman, Cadrette, and Gressle, and these defendants are entitled to qualified immunity.[10] See Griffith v. Bird, No. 3:06cv308-1, 2009 WL 3722804, at *2 (W.D.N.C. Nov. 3, 2009) (finding that plaintiff failed to state a RLUIPA claim against individual defendants were such defendants followed policy and did not act with deliberate indifference to plaintiff's religious rights), aff'd, 410 F. App'x 713 (4th Cir. 2011). Plaintiff's remaining RLUIPA, First Amendment and equal protection challenges are claims against defendants Brown, Joyner, and Solomon in their official capacities for issuing policies which violate the constitution. Thus, qualified immunity is not available to defendants on plaintiff's remaining claims. See Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006).

To the extent plaintiff alleges that defendants Gressle and Dorman interfered with his access to courts because they confiscated his numerology dice and pendulum, which plaintiff contends he intended to use as exhibits in this action, his claim fails. In order to state a claim for denial of access to courts, an inmate must allege an actual injury arising out of the alleged denial. See Lewis v. Casey, 518 U.S. 343, 349 (1996). Here, plaintiff has not stated how he intended to use the

---

[9] To the extent certain confiscated items were found to be permissible pursuant to the Religious Practices Reference Manual, such fact does not create individual liability for such defendants. Specifically, the record reflects that defendants investigated the confiscated items and returned to plaintiff any permissible items. Such conduct does not reflect an intent on behalf of any defendant to violate plaintiff's religious rights.

[10] The court notes that RLUIPA does not provide for recovery of monetary damages. See Sossamon v. Texas, – U.S. –, 131 S.Ct. 1651, 1663 (2011) (finding RLUIPA does not authorize a private cause of action for money damages against prison personnel for action taken in their official capacity); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009).

numerology dice or pendulum as evidence in this case or how the inability to do so has thwarted his efforts in litigating this action. Thus, plaintiff failed to establish any injury, and his access to courts claim fails.

1.     RLUIPA and First Amendment

Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with plaintiff's RLUIPA claim, RLUIPA provides, in part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

Under RLUIPA, the plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quotations, citation, and alterations omitted).

Once the inmate makes a prima facie showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting and citing Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted); Ozmint, 578 F.3d at 252 (quotations omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190); see Holt, 135 S.Ct. at 866.

As for plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. Amend. I. The United States Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest.

13

O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safely, 482 U.S. 78, 89–91 (1987).

In deciding whether a defendant's actions can be sustained as "reasonably related to legitimate penological interests," the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest. See Turner, 482 U.S. at 89–90. Claims pursuant to the First Amendment and RLUIPA are evaluated under the same factors, but First Amendment claims are subject to a less demanding standard of proof. See Lovelace, 472 F.3d at 199, n.8 ("RLUIPA adopts a 'more searching standard' of review than that used for parallel First Amendment claims, strict scrutiny instead of reasonableness.") (quoting Madison v. Ritter, 355 F.3d 310, 314-15 n.1.).

a.     Tarot Card Reading

The court assumes, without deciding, that plaintiff is able to establish a *prima facie* case with respect to his challenge to DPS' policy restricting tarot card use to individual use only. Accordingly, the court now looks to whether the policy at issue furthers a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

In an effort to meet their burden, defendants state that DPS restricts tarot card reading to individual practice because tarot card reading is a personal exercise in Wicca and because permitting an inmate to read tarot for another inmate places the reading inmate in a position of leadership over

14

the non-reading inmate which creates security concerns. (Brown Aff. ¶ 16.) Defendants contend that such policy promotes institutional security because it provides the opportunity for correctional staff to monitor the items used at religious services to ensure that the religious practice is not used to cover gang or other criminal activity and to ensure that individuals are permitted to practice their faiths free from outside influences. (Joyner Aff. ¶ 9.)

Prison safety and security are compelling government interests. See United States v. Stotts, 925 F.2d 83, 86-87 (4th Cir. 1991); Harris v. Chapman, 97 F.3d 499, 504 (11th Cir. 1996). A prison is free to deny inmate religious requests predicated on RLUIPA if they "jeopardize the effective functioning of an institution." Cutter, 544 U.S. at 726. Congress, when enacting RLUIPA, was "mindful of the urgency of discipline, order, safety, and security in penal institutions." Id. at 723 (citation omitted). Congress "anticipated that courts would apply the [RLUIPA's] standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with considerations of costs and limited resources." Id. (quotations and citation omitted). Thus, the court finds that the DPS policy is in furtherance of a compelling governmental interest. See, Raper v. Sergeant Adams, No. 06-CT-00041-D, 2007 WL 3532344, at * (E.D.N.C. Mar. 29, 2007) (finding that policy restricting tarot card reading to personal use only did not violate the First Amendment because the potential of inmates to barter for card readings creates security risks), aff'd, 238 F. App'x 964 (4th Cir. 2007); Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 610-11 (5th Cir. 2008) (finding that rune stones and tarot cards could be used for "gambling, trafficking, and trading," as well as "secretly passing of information.")

As for whether the DPS policy is the least restrictive means of furthering the interests of security, the record reflects that the policy at issue permits plaintiff to conduct tarot card readings for himself. (Brown Aff. ¶ 16.) Given the security risks involved and the opportunities presented for inmates to engage in illicit activities in the course of reading tarot cards for other inmates, the DPS policy is the least restrictive means of furthering a compelling governmental interest, and plaintiff failed to establish a RLUIPA violation. See, e.g., Kaiser v. Shipman, No. 3:07CV229/LAC/EMT, 2009 WL 2423141, at *9 (N.D. Fl. Aug. 4, 2009) (finding that policy requiring inmates to use their tarot cards during the day in the chapel did not violate RLUIPA).

Because RLUIPA requires a more stringent strict scrutiny standard than the First Amendment, the court further finds that the policy at issue is reasonably related to legitimate penological interests. See Lovelace, 472 F.3d at 199–200 ("[T]he First Amendment affords less protection to inmate's free exercise rights than does RLUIPA."). Thus, plaintiff failed to establish a RLUIPA or First Amendment violation.

To the extent plaintiff alleges an equal protection claim arising out of DPS' policy related to tarot card readings, his claim fails. Because the policy at issue is based upon a compelling governmental interest, it does not implicate the equal protection clause. In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 469 (4th Cir. 1999) (finding that the designation of the Five Percenters as a security threat group is "a rational response to a threat to prison safety-a concern peculiarly with the province of penal authorities."); see also, Winder v. Maynard, 2 F. Supp. 3d 709, 716 (D. Md. 2014) ("[D]efendants have demonstrated their inability to provide pork through dietary services due to legitimate penological goals regarding budget and security. The current meal plans were created in order to see that needs

16

of all religious groups are accommodated. No discriminatory animus has been show[n]"), aff'd, 583

F. App'x 286 (4th Cir. 2014). Thus, plaintiff's equal protection claim arising out of the tarot card

policy fails.[11]

                      b.        Deprivation of Religious Property

Plaintiff contends that the DPS policy preventing him from having a sacred items box,

numerology dice, a pendulum, materials for a "working circle," sacred items constructed of natural

materials, and supplies for the maintenance of his "Book of Shadows" violates his rights pursuant

to RLUIPA and the First Amendment. Aside from the "Book of Shadows," which plaintiff is

permitted to possess,[12] defendants assert in their motion for summary judgment that the remaining

disputed items are not on the list of items approved for the practice of Wicca in the DPS Religious

Practices Reference Manual. See (Brown Aff. Ex. B, p.4.) Defendants further contend that plaintiff

has not established that his practice of Wicca is substantially burdened by the exclusion of these

items in the manual.

In conducting a "substantial burden" analysis, a court should not judge the significance of

a particular belief or practice to the religion at issue. Cutter, 544 U.S. at 725 n. 13; Lovelace, 472

F.3d at 187 n. 2. Rather, RLUIPA protects "any exercise of religion, whether or not compelled by,

or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A) (emphasis added). Thus,

a plaintiff must demonstrate that a governmental entity substantially pressured him to modify his

behavior and to violate his religious beliefs in order to demonstrate that his religious practice has

---

[11] The remainder of plaintiff's equal protection claims will be analyzed below.

[12] The court notes that DPS does not provide a limit on the number of "Book of Shadows" that an inmate is permitted to possess. See (Brown Aff. ¶ 12.) Plaintiff further has not provided any evidence that he has been prevented from possessing more than one "Book of Shadows."

17

been substantially burdened. See Lovelace, 472 F.3d at 187. A plaintiff, however, is not required, as part of this prima facie showing, to prove that the exercise at issue is required by or essential to his religion. See Cutter, 544 U.S. at 725 n. 13.

The court focuses its inquiry on whether plaintiff presented evidence to demonstrate that the disputed policy substantially pressured him to modify his behavior and violate his religious beliefs. Regarding the sacred items box, plaintiff asserts that its purpose is to prevent religious tools from being touched. (Pl.'s Resp. p. 40.) Plaintiff, however, failed to provide evidence that his inability to possess a sacred items box forced him to modify his behavior or violate his religious beliefs. Plaintiff, further, has provided no facts or evidence whatsoever–aside from his unreasoned say so–to establish that the loss of the remaining disputed items forced him to modify his behavior or violate his religious beliefs. See Krieger v. Brown, 496 F. App'x 322, 326 (4th Cir. 2012) ("Because Krieger did not show that the deprivation of an outdoor worship circle and the requested sacred items modified his behavior and violated his religious beliefs, the district court correctly determined that Krieger failed to establish a prima facie case under RLUIPA."); Gelford v. Frank, 310 Fed. App'x 887, 889 (7th Cir. 2008) (finding that Wiccan inmates failed to demonstrate that prison's failure to provide them with requested divination tools, including a pendulum, substantially burdened their religious practice); DeSimone v. Bartow, 355 F. App'x 44, 46 (7th Cir. 2009) ("noting the insufficiency of a plaintiff's 'unreasoned say-so' to create a triable issue" (quoting Borzych v. Frank, 439 F.3d 388, 390 (7th Cir. 2006))); see also, Marron v. Jabe, No. 1:12cv468(TSE/TRJ), 2014 WL 585850, at *5 n. 5 (E.D.Va. Feb. 14, 2014) (citations omitted) ("[P]laintiff asserts that without the ability to order CD's from a lawful source, he cannot learn or practice [his] religion at all and if [he] doesn't learn [his] religion [he] will be a disbeliever and [he]

18

fear[s] nothing not even death itself except the wrath of Allah[.] Such generalized and non-specific explanations do not coherently or sufficiently articulate the existence of a substantial burden on plaintiffs religious practice." (internal quotation omitted)), aff'd, 582 F. App'x 210 (4th Cir. 2014); Gordon v. Mullins, No. 7:12cv00494, 2014 WL 1118199, at *6 (W.D. Va. Mar. 20, 2014) ("Although denying Gordon the ability to choose which books he kept may have made it more difficult, inconvenient, or expensive for him to understand and practice his faith, that does not rise to the level of a substantial burden."), aff'd, 582 F. App'x 248 (4th Cir. 2014).

To the extent plaintiff alleges any claim based upon retaliation arising out of the confiscation of his religious property, such claim fails. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (finding that inmate must present more than conclusory allegations of retaliation). Plaintiff failed to allege any facts connecting the adverse actions to his lawsuit or demonstrating specific harm to his litigation efforts. Thus, this claim is meritless.

Based upon the foregoing, plaintiff failed to establish that his inability to posses the disputed items substantially burdened his practice of Wicca.[13] Accordingly, plaintiff is unable to establish a RLUIPA or First Amendment violation.

c.      Corporate Worship

Plaintiff contends that the DPS policies governing corporate worship have been inequitably applied to all religions and have prevented him from engaging in corporate worship for sabbats and esbats. Plaintiff presented evidence in the form of letter from Lady Ashleen O'Gaea of Mother Earth Ministries-ATC stating that corporate worship for celebrating esbats and sabbats is part of the

---

[13] With respect to plaintiff's request for materials to maintain his "Book of Shadows," the court further notes that plaintiff has not stated what materials he has been denied or even what materials he needs to maintain his "Book of Shadows." Thus, he has failed to establish a substantial burden on his religion.

19

Wicca practice. (Pl.'s Resp. Attach. p. 17.) Accordingly, plaintiff has demonstrated a substantial burden on his religious exercise. See, e.g., Lovelace, 472 F.3d at 187-88.

In an effort to establish their burden under RLUIPA and the First Amendment, defendants contend that DPS policy provides that the observances of sabbats and esbats are subject to the approval of the facility head, and that the facility head at both Harnett and Lumberton have not approved corporate worship for esbats. (Brown Aff. ¶ 18; Am. Compl. Attach. p. 46; Pl.'s Resp. Attach. p. 12.) Plaintiff further presented evidence reflecting that Wiccan inmates have sought approval for corporate worship from the facility head at Lumberton Correctional Institution, but have been denied corporate worship, whereas other religious groups have been provided designated times for corporate worship. (Pl.'s Resp. Attach. pp. 6-8, 12.) Defendants may not rely upon a prison policy when they fail to apply it in a uniform and consistent manner. See, e.g., Holt, 135 S.Ct. at 864; Ozmint, 578 F.3d at 254; Mayfield, 529 F.3d at 614; cf., Turner v. Hamblin, 590 F. App'x 616, 620 (7th Cir. 2014).

To the extent defendants seek to rely on the DPS policy requiring outside volunteers for corporate worship to meet their burden under RLUIPA or the First Amendment, defendants have failed to demonstrate that they have "acknowlege[d] and give[n] some consideration to less restrictive alternatives[,]" such as posting a correctional officer for security during inmate-led services. Couch, 679 F.3d at 203; see Holt, 135 S.Ct. at 865; Wall, 741 F.3d at 501; Ozmint, 578 F.3d at 252-54. Moreover, plaintiff asserts that such policy is being applied inequitably because Wicca is the only faith group that is subject to such policy. (Pl.'s Resp. p. 18.) Accordingly, defendants have not met their burden, and the court denies their motion for summary judgment as

to plaintiff's RLUIPA and Free Exercise claims concerning corporate worship.  See Hodges v. Brown, No. 5:11-CT-3242-D, 2015 WL 736077, at * 9 (E.D.N.C. Feb. 20, 2105).

        d.      Feasts

Plaintiff contends that the DPS policy which states that food is not part of the Wiccan religious practice violates RLUIPA and the First Amendment.  Plaintiff, again, provided evidence that Wiccan faith celebrations incorporate feasts, including the provision of cakes and juice at Esbat services.  See (Pl.'s Resp. Attach. p. 17, 19, 20, 25.)  Plaintiff further provided evidence that defendant Brown was aware of such requirement as early as 2004.  (Id. p. 19.)  Plaintiff has demonstrated a substantial burden on his religious exercise.  See, e.g., Lovelace, 472 F.3d at 187-88.

Defendants cite no policy justification for preventing Wiccan inmates from using food in their religious celebrations.  Plaintiff contends that his requests to use food in his religious celebrations have been denied, and that other religions are permitted the opportunity to use food as a part of their religious services.  Accordingly, defendants have not met their burden, and the court denies their motion for summary judgment as to plaintiff's RLUIPA and Free Exercise claims concerning corporate worship.  See Hodges, 2015 WL 736077, at * 9.

        e.      Restrictions on Wicca Worship

Plaintiff contests the Harnett policy restricting plaintiff's religious practice to specific designated areas.  Plaintiff presented evidence that other religious groups were permitted to practice their religion, both individually and in groups, in non-designated worship areas.  See (Pl.'s Resp. Attach. p. 5.)

Defendants maintain that policy requires inmates to practice their respective religions in designated areas due to security concerns.  Again, defendants may not rely upon a prison policy

when they fail to apply it in a uniform and consistent manner.  See, e.g., Holt, 135 S.Ct. at 864;

Smith, 578 F.3d at 254; Mayfield v. Texas Dep't of Criminal Justice, 529 F.3d 599, 614 (5th Cir.

2008); cf., Turner, 2014 WL 5438067, at *3.  Thus, defendants' motion for summary judgment is

denied as to this claim.

        2.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1.  To that end, the Equal Protection Clause provides that "all persons similarly situated

should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To

establish an Equal Protection Claim, a plaintiff  "must first demonstrate that he has been treated

differently from others with whom he is similarly situated and that the unequal treatment was the

result of intentional or purposeful discrimination.  If he makes this showing, the court proceeds to

determine whether the disparity in treatment can be justified under the requisite level of scrutiny."

Veney v. Wyche, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal quotation omitted); Morrison v.

Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).  In a prison context, this level of scrutiny is "whether

the disparate treatment is reasonably related to [any] legitimate penological interests."  Veney, 293

F.3d at 732 (internal quotation omitted).

Plaintiff asserts that DPS treats Wiccans differently from other religious groups.  Plaintiff

specifically asserts that Native Americans are permitted to possess a sacred items box, whereas

Wiccan inmates are not.  Plaintiff further asserts that other religious groups are permitted to engage

in corporate worship (including inmate-lead corporate worship), use food as part of their religious

celebrations, construct religious items out of natural materials, and practice their faiths in non-designated areas for worship.

Plaintiff first fails to allege facts to establish that he is similarly situated to the inmates who received the alleged preferential treatment. For instance, plaintiff does not identify any particular inmate at the same facility with the same custody classification who has been treated differently from plaintiff. Moreover, even assuming that plaintiff, a Wiccan inmate, was treated differently from similarly situated inmates of other religious faiths with respect to these issues, there is no evidence that any prison official acted with a discriminatory purpose. See Williams v. Hansen, 326 F.3d 569, 584 (4th Cir. 2003) ("Though a valid claim for a violation of equal protection need not allege discrimination as the defendant's sole motive, it must allege the requisite discriminatory intent with more than mere conclusory assertions."); Spaulding v. Dixon, No. 90-7315, 1990 WL 126136, at *1 (4th Cir. 1990) (stating that conclusory allegations of discrimination are insufficient to state a constitutional claim); Mcalister v. Livingston, 348 F. App'x 923, 938 (5th Cir. 2009) ("McAlister asks us to infer discriminatory intent on the part of TDCJ from his evidence of unequal treatment; this we decline to do. A fact issue regarding whether TDCJ neutrally applies its policy does not constitute proof of discriminatory intent."); see also, Coleman v. Jabe, No. 7:11cv00518, 2012 WL 7801722, at * (W.D. Va. Dec. 26, 2012) ("I find that, even assuming Coleman can show that he is similarly situated with the Christian inmates and that he was treated differently from them, he has not made the requisite showing that such disparate treatment was the result of purposeful or intentional discrimination. Instead, Coleman merely concludes from the disparate treatment that the intent was discriminatory. This is not enough to establish an equal protection claim . . . ."). Thus, defendants are entitled to summary judgment as to plaintiff's equal protection claim.

3. New Claims

Plaintiff makes random allegations in his various pleadings. To the extent plaintiff attempts to allege any new claims in his miscellaneous filings or in response to summary judgment, such claims are not part of this action because plaintiff failed to move to amend his complaint to include any new claims pursuant to Federal Rule of Civil Procedure 15(a). Moreover, permitting plaintiff the opportunity to amend his complaint at this juncture would be prejudicial to defendants. For these reasons, the court does not consider any new claims asserted in plaintiff's miscellaneous filings or in response to defendants' motion for summary judgment as part of this action, and such claims are DISMISSED without prejudice. See United States v. ex rel. DRC, Inc. v. Ouster Battles, LLC, 472 F. Supp. 2d 787, 796 (E.D. Va. 2007) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292 (9th Cir. 2000)), aff'd, 562 F. 3d 295 (4th Cir. Apr. 10, 2009).

## CONCLUSION

For the foregoing reasons, the court rules as follows:

(1) Defendants' motion for summary judgment (DE 73) is GRANTED in part and DENIED in part. The motion is DENIED as to plaintiff's RLUIPA and First Amendment claims concerning his ability to engage in corporate worship, feast, and practice his religion outside of the areas specifically designated for religious worship. Defendants' motion is GRANTED as to plaintiff's remaining claims. Accordingly, defendants Shaw, Heartsell, Dorman, Cadrette, and Gressle are DISMISSED from this action;

(2) Any new claims raised in plaintiff's miscellaneous pleadings are DISMISSED without prejudice;

(3)     The court REFERS this action to Magistrate Judge Robert B. Jones for a

court-hosted settlement conference, and the court STAYS further activities

in this case pending outcome of the settlement conference.  In the event the

parties fail to agree to a resolution of this action, the matter will be set for

trial.

SO ORDERED, this the 29th day of September, 2015.


LOUISE W. FLANAGAN
United States District Judge